[Cite as *In re E.H.-B.*, 2024-Ohio-649.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.H.-B.

C.A. No.     30870

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 23 04 0348

DECISION AND JOURNAL ENTRY

Dated: February 21, 2024

HENSAL, Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}    Mother is the biological mother of E.H.-B., born April 25, 2023. The child's paternity has not been established, and no man has come forward claiming to be her biological father. Mother is also the biological mother of four older children, all of whom were previously removed from her care in prior dependency/neglect/abuse cases. The juvenile court awarded legal custody of Mother's twins to a third party, while it involuntarily terminated Mother's parental rights as to another son and daughter, placing them in the permanent custody of CSB. This Court affirmed the awards of permanent custody on appeal. *See In re E.H. (and E.B.)*, 9th Dist. Summit Nos. 30487 and 30488, 2023-Ohio-2470.

**{¶3}** While pregnant with E.H.-B., Mother was charged with various felony offenses and incarcerated pending trial. As Mother has a long history of severe mental health issues, she pleaded not guilty by reason of insanity. The trial court planned to transfer Mother to Northcoast Behavioral Health ("NBH") for a competency evaluation. Prior to that transfer, jail personnel transported Mother to a local hospital to give birth. Mother exhibited delusional, psychotic, and violent behaviors in the hospital. Her behavior was so extreme that the hospital psychiatrist advised that Mother remain secured to her bed and not have any contact with the infant in the interest of keeping the child safe.

**{¶4}** A CSB intake caseworker visited Mother and the child in the hospital. Mother initially denied having given birth. Thereafter, she could not coherently communicate with the caseworker or provide adequate information to identify the child's father. Based on Mother's history with the agency; her current mental state, felony charges, and pending transfer to NBH; the father's unknown identity; and the lack of relatives willing and able to provide care for the child, CSB filed a complaint alleging that E.H.-B. was a dependent child.

**{¶5}** CSB's complaint sought an interim emergency order of temporary custody pending adjudication, and an initial dispositional order of permanent custody as authorized by Revised Code Section 2151.353(A)(4). The agency alleged various Section 2151.414(E) grounds in support of its claim that the child could not or should not be returned to her parents within a reasonable time, including the subsection (E)(11) ground that a juvenile court had previously involuntarily terminated Mother's parental rights as to two of the child's siblings. The complaint further requested that the juvenile court excuse the agency from the requirement to use reasonable efforts to try to reunify the child with Mother based on Mother's prior involuntary terminations of her parental rights regarding the other two children.

{¶6} On the same day, CSB filed a motion to bypass its statutory requirement to make reasonable efforts to prevent the initial removal of the child from Mother's care. The agency cited the two prior cases in which the juvenile court had terminated Mother's parental rights as to E.H. and E.B. and requested a ruling on the motion at the shelter care hearing. After that hearing, the magistrate issued an order excusing the agency from making reasonable efforts to prevent the child's removal and maintain her in Mother's home. Mother did not move to set aside that order.

{¶7} CSB filed its statutorily required proposed case plan. Despite the caseworker's later testimony that it did not include any requirements for Mother, the case plan in fact enumerated eight objectives for her relating to mental health, basic needs, substance abuse, parenting education, and the resolution of pending criminal cases.

{¶8} As the case progressed, the parties informed the juvenile court at a hearing that NBH had determined that Mother was not currently competent to stand trial for her criminal charges. The parties stipulated that Mother had been committed to NBH for further treatment to attempt to restore her to competency and that she "will be unavailable for some period of time." Based on NBH's determination that Mother was unable to understand her criminal proceedings and assist her attorney in her defense, the juvenile court appointed a guardian ad litem to represent Mother's best interest in the child's dependency case.

{¶9} After an adjudicatory hearing, the magistrate found the child to be dependent. The magistrate relied on evidence of Mother's unavailability due to her incarceration; ongoing struggles with mental health issues; and loss of custody of four older children, including the involuntary termination of her parental rights as to two of the child's siblings. Mother did not file an objection. The juvenile court adopted the magistrate's decision as its order.

{¶10} The matter proceeded to a permanent custody hearing before a visiting judge. While Mother did not have a written motion pending before the trial court, her attorney requested that the court deny the agency's motion to give Mother time to engage in services in pursuit of reunification. The juvenile court issued a judgment granting CSB's motion for permanent custody and terminating Mother's and any alleged father's parental rights regarding E.H.-B. The trial court found that CSB was not required to make reasonable efforts to reunify the child with her parents because the unknown father had abandoned the child and Mother's parental rights to two of the child's siblings had been previously involuntarily terminated. *See* R.C. 2151.419(A)(2)(d) and (e). The juvenile court further found that, notwithstanding the prior terminations of her parental rights, Mother had failed to prove by clear and convincing evidence that she had remedied the prior concerns and could provide a legally secure home for the child. *See* R.C. 2151.414(E)(11). Moreover, the trial court found that an award of permanent custody to the agency was in the child's best interest. *See* R.C. 2151.414(D). Mother timely appealed and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS BECAUSE [CSB] FAILED TO MAKE REASONABLE REUNIFICATION EFFORTS PRIOR TO OR AT THE PERMANENT CUSTODY HEARING.

{¶11} Mother argues that the juvenile court committed plain error by granting CSB's motion for permanent custody because the agency failed to make reasonable reunification efforts when the juvenile court had not excused it from its obligation to do so. This Court disagrees.

{¶12} As an initial matter, this Court notes that Mother does not challenge the juvenile court's factual findings that her parental rights to two of the child's siblings had previously been

involuntarily terminated and that an award of permanent custody was in the child's best interest. She limits her argument to challenging merely the agency's failure to make, and the juvenile court's excusing CSB from making, reasonable reunification efforts. We limit our discussion accordingly.

{¶13} Section 2151.419(A) provides in relevant part:

(1) *Except as provided in division (A)(2) of this section,* at any hearing held pursuant to section 2151.28 [shelter care and adjudication], * * * or 2151.353 [initial disposition] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. * * *

(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:

* * *

(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code * * *.

(Emphasis added.)

{¶14} Relying on Mother's two prior involuntary terminations of parental rights, CSB requested that it be excused from using reasonable efforts to prevent the initial removal of the child. The magistrate granted that motion at the shelter care hearing, thus relieving the agency of its obligation relative to the child's removal from her home. Mother did not move to set aside that order.

{¶15} The magistrate did not make a reasonable efforts determination at the adjudicatory hearing, but Mother did not file an objection to that decision. At all times during the case to that

point, Mother was either in jail or committed to NBH for competency restoration services. All attorneys earlier stipulated that Mother's circumstances left her "unavailable" to participate in any meaningful way in the proceedings. Assuming without deciding that CSB remained obligated to use reasonable reunification efforts between shelter care and adjudication and that the juvenile court erred by not making a reasonable efforts determination at that time, any error was harmless, as Mother has not demonstrated how she was prejudiced.

{¶16} The juvenile court held a permanent custody hearing pursuant to Section 2151.353 as its initial dispositional hearing. The statute allows the trial court to grant permanent custody upon its determination that the child cannot or should not be placed with either parent in accordance with Section 2151.414(E) and that the permanent commitment is in the best interest of the child pursuant to Section 2151.414(D)(1).

{¶17} The agency properly served Mother with its complaint in which it sought permanent custody and requested that it be excused from using reasonable reunification efforts. All parties had notice that CSB was requesting a bypass determination relieving the agency of its statutory duty to make reasonable efforts. Mother was represented by counsel at all stages of the proceedings. She had the opportunity to challenge the agency's request for a reasonable efforts bypass.

{¶18} Pursuant to Section 2151.419(A), at the permanent custody hearing, the juvenile court was obligated to either make a reasonable efforts determination pursuant to division (1) or relieve CSB of its duty to use reasonable efforts pursuant to division (2). It did the latter. The agency presented evidence of Mother's prior involuntary terminations of her parental rights as to two of the child's siblings. Mother's attorney stipulated to the admission of the siblings' juvenile

records. Accordingly, the record supports the juvenile court's bypass determination that CSB was not required to make reasonable efforts.

{¶19} The juvenile court properly complied with the statutory mandates in Section 2151.419 as those related to the shelter care and permanent custody hearings. To the extent it failed to do so at the adjudicatory hearing, any error was harmless based on Mother's failure to demonstrate prejudice. Mother does not challenge the juvenile court's findings underlying its award of permanent custody of E.H.-B. to CSB. Nevertheless, this Court has thoroughly reviewed the record and we conclude that the judgment is supported by the evidence. Mother's assignment of error is overruled.

III.

{¶20} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.

MICHELLE TOMER, Guardian ad Litem, for Mother.